# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Brief August 6, 2001

## STATE OF TENNESSEE, EX REL. TEWANNA STEWART v. GARY LOCKETT

**Appeal from the Juvenile Court for Davidson County**
**No. 99-25061     Betty Adams-Green, Judge**

---

**No. M2001-00809-COA-R3-JV - Filed January 30, 2002**

---

The juvenile court ordered the father of a minor child to pay retroactive child support for the first ten years after the child's birth. Because the court did not want to create a windfall for the mother, it ordered that only part of the retroactive support be paid to her, and that the remainder be placed in an educational trust fund for the child's benefit. The State argues on appeal that under the facts of this case, the creation of an educational trust fund is not authorized by the child support statutes and guidelines. We affirm the award of retroactive child support, but we reverse its allocation between the mother and the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed in Part; Reversed in Part; and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Paul G. Summers, Attorney General & Reporter; Stuart F. Wilson-Patton, Senior Counsel, for the appellant, State of Tennessee, ex rel. Tewanna Stewart.

Terry Clayton, Nashville, Tennessee (at trial) for the appellee, Gary Lockett.

## OPINION

### I. PROSPECTIVE CHILD SUPPORT

Gary Lockett and Tewanna Stewart are the parents of Gary Jabar Stewart, who was born on April 1, 1989. Ms. Stewart and the child lived with Ms. Stewart's mother during the first four years of the child's life. They then took an apartment of their own. Ms. Stewart apparently received AFDC public assistance for a total of about thirty-six months.

Ms. Stewart and Mr. Lockett never lived together, but they maintained a relationship for about six years. During that time, Ms. Stewart didn't ask for regular child support, but she would occasionally ask Mr. Lockett for money to help her buy necessities like shoes and clothing for their

child. Mr. Lockett generally complied, and he also bought presents for the boy on his birthday, Christmas, and at other times.

Legal proceedings began after the child reached the age of ten. On October 29, 1999, a petition was filed against Mr. Lockett in the name of State of Tennessee ex rel. Tewanna Stewart[1] to establish paternity and set child support. During a hearing before the Juvenile Court referee, conducted on January 24, 2000, the parents waived their right to parentage testing, and acknowledged that Gary Lockett was the biological and legal father of Gary Jabar Stewart. The court ordered Mr. Lockett to pay prospective child support in the amount of $55 per week, based on his monthly income of $1386. A further hearing to determine the question of child support arrearage was scheduled for March 14.

## II. RETROACTIVE CHILD SUPPORT

During the March 14 hearing, the parties presented widely conflicting testimony as to the amount of support Mr. Lockett had provided during the first ten years of his son's life. Ms. Stewart declared that she could only give him credit for $500 to $700, while Mr. Lockett claimed that his contribution was in excess of $10,000. Although the court did not find the testimony of either party to be credible, it also found that "it is not unjust or inappropriate to apply the guidelines in this matter."

The referee accordingly calculated the total amount that Mr. Lockett would have been responsible for in accordance with the child support guidelines if he had paid support from the time of his son's birth. From this amount, $32,802, he subtracted $1,900, which he found to be Mr. Lockett's actual contribution during that time, for a total retroactive obligation of $30,702.

An award for retroactive child support is generally considered to have two purposes: to benefit the parties' child and to reimburse the custodial parent for contributing more than her fair share to the child's support. See *State ex rel Vaughn v. Kaatrude,* 21 S.W.3d 244 (Tenn. Ct. App. 2000). The referee stated that in light of the support Ms. Stewart received from her mother and from AFDC, there was no proof that she contributed more than her fair share to the child. He declared that awarding the full amount to the mother would constitute a windfall to her, and he accordingly fashioned an award that he hoped would be fair to the mother, but of maximum benefit to the child.

The court awarded Ms. Stewart $125 per month for 133 months,[2] or $16,625, then reduced the payments to $20 per week, premised on future intercepts by the State of Mr. Lockett's federal income tax refunds. *See* Tenn. Rules & Regs 1240-2-3-.02. The referee declared that the other $14,077 should be placed in trust for the child's future educational use. To this end, he ordered Mr. Lockett to continue paying the regular child support amount of $55 per week to the Juvenile Court

---

[1]The State apparently has a subrogation right to a portion of the child support Ms. Stewart would be entitled to collect, pursuant to Tenn. Code. Ann. § 71-3-124.

[2]The order actually said 153 months, but this was obviously a typographical error

Clerk for five years after Gary Stewart's emancipation, with the clerk to hold these monies in an interest-bearing account to be used for the child's post-secondary education.

The State promptly appealed the referee's order to the Juvenile Court Judge. After a hearing conducted on December 7, 2000, the judge affirmed the use of retroactive child support payments to fund an educational trust. She apparently did not agree, however, that Mr. Lockett's monthly obligation should be offset by anticipated intercepts of tax refunds, for she increased the weekly payments on the $16,625 judgment to $40 per week. The State then filed this appeal.

## III. THE CHILD SUPPORT GUIDELINES

Since Mr. Lockett did not file a response to the State's brief on appeal, this case is before us solely on the questions raised by the State: whether the trial court erred both by dividing the retroactive child support between Ms. Stewart and her child, and by ordering the creation of an educational trust for the child.

### A. THE DIVISION OF SUPPORT BETWEEN MOTHER AND CHILD

Child support awards in this State are governed by guidelines promulgated in accordance with Tenn. Code. Ann. § 36-5-101(e). The guidelines are found in the Rules and Regulations of the Department of Human Services at Tenn. Comp. R. & Reg. 1240-2-4, and they include tables which set out presumptively correct amounts of child support, based upon the net income of the obligor, and the number of children to be supported. A trial court may deviate from the amount set out in the tables, but only if the court makes "a written or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case." Tenn. Comp. R. & Reg. 1240-2-4-.01(2).

Our courts have suggested in several cases that the trial court has greater discretion in shaping a child support award, including the amount and method of payment, when retroactive rather than prospective child support is at issue. *State ex rel Vaughn v. Kaatrude,* 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000); *State Dept. of Human Services v. Springs*, 976 S.W.2d 654, 656 (Tenn. Ct. App. 1997); *State ex rel Coleman v. Clay*, 805 S.W.2d 752, 755 (Tenn. 1991). However, the trial court must still take the guidelines into account. Tenn. Code. Ann. § 36-2-311 of the paternity statutes declares,

> (a) Upon establishing parentage, the court shall make an order declaring the father of the child. This order shall include the following:
>> (1) . . .
>> . . .
> (11) Determination of child support pursuant to chapter 5 of this title. In determining retroactive support, if any, deviation from the guidelines may occur at the discretion of the court. The court must make a written finding that application and guidelines would be unjust or inappropriate in order to provide for the best interests of the child or the equity between the parties . . . .

The juvenile court referee was thus correct in looking first to the guidelines to determine the presumptively correct amount of retroactive support. While he did not find the application of the guideline amount unjust or inappropriate, he deviated from the statutory presumption that the *ultimate recipient of the award will be the person exercising custody of the child.* See Tenn. Code. Ann. § 36-5-101(a)(4). The referee explained his reasons as follows:

"By law the retroactive support obligation is $30702.00. The Court finds that awarding the full amount to the mother would amount to a windfall for her. There was no proof that she spent an amount equal to this for her child. To now give the mother a judgment for monies she never spent on the child would amount to a windfall for her. The Court finds that a reasonable amount, in this case $125 per month for 153 (sic) months or $16,625 should be awarded to the mother to reimburse her for amounts she spent on the child.

The Court finds that it would be in the best interest of the child to place the remaining retroactive support, $14,077.00 in trust for future educational use for the child. The Court cannot give the child those extra things he would have had if the Respondent had been providing adequate support since birth but, the Court can allot those monies for such extras for future use for the child's benefit."

As this court said in *State ex rel Vaughn v. Kaatrude,* 21 S.W.3d 244 (Tenn. Ct. App. 2000), decisions setting child support are within the discretion of the trial court, and we must review such decisions using the deferential "abuse of discretion" standard of review. 21 S.W.3d at 248. Any award that deviates from the guidelines or from the mandates of Tenn. Code. Ann. § 36-5-101, and which lacks an adequate evidentiary foundation constitutes an abuse of discretion.

We have said that part of a retroactive support award may be paid to the child if the father's failure to pay support deprived the child of the level of care to which he/she was entitled. *State ex rel. Grant v. Prograis*, 979 S.W.2d 594 (Tenn. Ct. App. 1997); *Tallent v. Cates*, 45 S.W.3d 556 (Tenn. Ct. App. 2000). In this case, however, there was absolutely no evidence presented as to how much Ms. Stewart spent on her child from her own resources, or whether the youngster was deprived of any of the material necessities that accompany a normal childhood. The referee purportedly based his findings on the undisputed fact that Ms. Stewart received financial assistance from her mother for four years, and AFDC assistance for three years. But there was no testimony as to the amount of assistance she received from either source.

There was thus no basis in the record for a determination that she was entitled to be reimbursed no more than $16,625. It appears that the referee actually arrived at this figure by estimating the amount that Mr. Lockett would be able to pay on a monthly basis, and calculating the resulting total from the cumulative monthly payments during the remainder of the child's minority.

We accordingly vacate the portion of the trial court's award that divided the child support between mother and child, and make the entire amount payable to the mother. We remand this case to the trial court so that it may determine an appropriate schedule of installment payments on its total judgment. We note that an award of child support arrearage, like any other judgment, must be paid

-4-

off in a reasonable time, but that does not necessarily mean that it has to be paid entirely within the child's minority. *See Tallent v. Cates*, 45 S.W.2d 556 (Tenn. Ct. App. 2000).

### B. THE EDUCATIONAL TRUST

The State points out that there is only one provision in the Child Support Guidelines that makes reference to the creation of an educational trust for the benefit of the child, Tenn. Rules & Regs 1240-2-4-.04 (f)(3), which only applies to obligors with a net income of over $10,000 per month.

We are not certain that the trial court is absolutely prohibited from directing a portion of a child support award to an educational trust where warranted by circumstances, even if the obligor's income is less than $10,000 a month. But since we have already directed that the money be paid to Ms. Stewart, no such trust can be funded, and the question is moot.

But even if we found it appropriate to divide the child support between the mother and the child, we would still have a problem with the lack of any evidentiary basis for the educational trust fund. We note that the referee ordered the funds to be made available to the child for higher education only, and that he stated that the funds would revert back to the father if the child chose not to go to college. No doubt the referee intended to create a strong motivation for college. But, while we share the trial court's appreciation for the value of higher education, it would be error to limit the beneficiary's use of the money, in the absence of any evidence as to Gary Stewart's school record, or his needs, abilities, or aspirations.

### IV.

The order of the trial court is affirmed in part and reversed in part. Remand this cause to the Juvenile Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the State of Tennessee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.